**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x

PAULINA KORENBLUM, FREDY      :
GIRON, and KENNETH M. WEBB,     :
on behalf of themselves and all others   :
similarly situated,                      :
                                          :     Case No. 15-cv-3383-JMF

              Plaintiffs,        :
                                          :

          v.                     :
                                          :

CITIGROUP, INC.,               :
                                          :

           Defendant.       :
                                          :

------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND**
**<u>COURT-AUTHORIZED NOTIFICATION PURSUANT TO 29 U.S.C. § 216(B)</u>**

MORGAN, LEWIS & BOCKIUS LLP
Sam S. Shaulson
101 Park Avenue
New York, NY  10178-0060
212.309.6718
212.309.6001 (fax)
sam.shaulson@morganlewis.com

Michael J. Puma
1701 Market Street
Philadelphia, PA 19103
215.963.5305
215.963.5001 (fax)
michael.puma@morganlewis.com

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................1

II.    FACTS ..........................................................................................................3

    A.    The So-Called Professional Day and Week "Pay Plans" Are In Fact Only Billing Arrangements Between Citi Affiliates And Their IT Vendors. .....................3

    B.    Plaintiffs Admit That IT Vendors With A Professional Day/Week Billing Arrangement With Citi Do Not Have A Common Compensation Policy. ................4

    C.    Plaintiffs Provide No Evidence About 38 Of The 40 IT Vendors, And Very Limited Evidence Regarding Just 2 Of The 40 IT Vendors.......................................6

    D.    Plaintiffs And The Putative Collective Action Members Were Paid Differently ........................................................................................................8

    E.    Plaintiffs And Putative Collective Action Members Performed Varying Duties ...........................................................................................................9

    F.    Plaintiffs And The Putative Collective Action Members Had Different Experiences With Respect To Plaintiffs' Theory Of Joint Employment .................11

III.    ARGUMENT ................................................................................................11

    A.    The Court Should Deny Conditional Certification Because Plaintiffs Engaged In Discovery Abuse And Submitted Knowingly False Declarations. ......................11

    B.    Plaintiffs Fail to Meet Their Burden To Show That IT Vendor Employees Subject To So-Called Professional "Pay Plans" Are Similarly Situated .................15

        1.    The Standard For Certification Is Meaningful And Fact-Based ..................15

        2.    Plaintiffs' Own Testimony Confirms There Is No Common, Unlawful Compensation Policy That Violates The Law...............................................16

        3.    Plaintiffs Are Not Similarly Situated To Each Other...................................17

        4.    Plaintiffs And Those They Seek To Represent Are Not Similarly Situated.................................................................................................19

    C.    The Court Should Deny Conditional Certification Because Plaintiffs' Litigation Tactics Do Not Promote Judicial Efficiency. ...........................................23

    D.    If the Court Grants Conditional Certification At All, Which It Should Not, It Should Limit Notice To Only Certain Judge Employees.........................................24

    E.    If Any Notice Is Permitted, It Should Be Fair And Accurate ..................................25

IV.    CONCLUSION ............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alonso v. Uncle Jack's Steakhouse, Inc.*,
648 F. Supp. 2d 484 (S.D.N.Y. 2009) ........................................................................ 23

*Blaney v. Charlotte-Mecklenburg Hosp. Auth.*,
No. 10-592, 2011 WL 4351631 (W.D.N.C. Sept. 16, 2011) .................................... 21

*Bobadilla v. MDRC*,
No. 03 Civ. 9217, 2005 WL 2044938 (S.D.N.Y. Aug. 24, 2005) ............................. 18

*Boutros v. JTC Painting & Decorating Corp.*,
No. 12-7576, 2013 WL 3110943 (S.D.N.Y. June 19, 2013) ...................................... 20

*Burley v. City of New York*,
No. 03-735, 2005 WL 668789 (S.D.N.Y. Mar. 23, 2005) ........................................ 11

*Czopek v. TBC Retail Group, Inc.*,
No. 14-675, 2015 WL 4716230 (M.D. Fla. Aug. 7, 2015) ........................................ 24

*Damassia v. Duane Reade, Inc.*,
250 F.R.D. 152 (S.D.N.Y. 2008) ................................................................................ 14

*F.D.I.C. v. Wrapwell Corp.*,
No. 93-859, 2002 WL 14365 (S.D.N.Y. Jan. 3, 2002) ............................................. 14

*Fischer v. Kmart Corp.*,
No. 13-4116, 2014 WL 3817368 (D.N.J. Aug. 4, 2014) ........................................... 24

*Flores v. Lifeway Foods, Inc.*,
289 F. Supp. 2d 1042 (N.D. Ill. 2003) ...................................................................... 19

*Fraticelli v. MSG Holdings, L.P.*,
No. 13-6518, 2014 WL 1807105 (S.D.N.Y. May 7, 2014) ................................... 15, 20

*Glatt v. Fox Searchlight Pictures, Inc.*,
811 F.3d 528 (2d Cir. 2016) ................................................................................. 15, 16

*Guillen v. Marshalls of MA, Inc.*,
841 F. Supp. 2d 797 (S.D.N.Y. 2012) ........................................................................ 19

*Guzelgurgenli v. Prime Time Specials Inc.*,
883 F. Supp. 2d 340 (E.D.N.Y. 2012) ....................................................................... 25

ii

## TABLE OF AUTHORITIES

**Page(s)**

*Harrison v. McDonald's Corp.*,
411 F. Supp. 2d 862 (S.D. Ohio 2005).......................................................................................19

*Hens v. ClientLogic Operating Corp.*,
No. 05-381, 2006 WL 2795620 (W.D.N.Y. Sept. 26, 2006) .....................................................24

*Hinojos v. Home Depot, Inc.*,
No. 06-00108, 2006 WL 3712944 (D. Nev. Dec. 1, 2006).......................................................17

*Hintergerger v. Catholic Health Sys.*,
No. 08-380, 2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009).......................................................25

*Hoffmann-La Roche, Inc. v. Sperling*,
493 U.S. 165 (1989) .............................................................................................................15, 23

*Holick v. Cellular Sales of New York, LLC*,
No. 13-738, 2014 WL 4771719 (N.D.N.Y. Sept. 24, 2014) .....................................................21

*Howard v. Securitas Sec. Servs., USA Inc.*,
No. 08-2746, 2009 WL 140126 (N.D. Ill. Jan. 20, 2009) .........................................................25

*Ikikhueme v. CulinArt, Inc.*,
No. 13-293, 2013 WL 2395020 (S.D.N.Y. Jun. 3, 2013) ...................................................17, 20

*Jancich v. Stonegate Mortg. Corp.*,
No. 11-2602, 2012 WL 380287 (D. Kan. Feb. 6, 2012) ...........................................................25

*Jones v. Judge Tech. Servs., Inc.*,
No. 11-cv-06910 (E.D. Pa. 2011)..........................................................................1, 3, 5, 23

*Khan v. Airport Mgmt. Servs.*,
LLC, No. 10-7735, 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) ...........................................20

*Knispel v. Chrysler Grp. LLC*,
No. 11-11886, 2012 WL 553722 (E.D. Mich. Feb. 21, 2012) ...................................................25

*Liger v. New Orleans Hornets NBA Ltd. P'ship*,
No. 05-1969, 2008 WL 348800 (E.D. La. Feb. 6, 2008) ...........................................................21

*Morales v. Plantworks, Inc.*,
No. 05-2349, 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006).....................................................12, 22

*Morangelli v. Chemed Corp.*,
2010 U.S. Dist. LEXIS 146149 (E.D.N.Y. June 15, 2010).........................................................24

# TABLE OF AUTHORITIES

**Page(s)**

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) .................................................................................. passim

*Nabi v. Hudson Grp. (HG) Retail, LLC*,
    310 F.R.D. 119 (S.D.N.Y. 2015) ............................................................................ 19, 20

*Newport Elecs. v. Newport Corp.*,
    157 F. Supp. 2d 202 (D. Conn. Aug. 1, 2001) ........................................................ 15

*O'Jeda v. Viacom, Inc.*,
    No. 13-5658, 2014 WL 1344604 (S.D.N.Y. Apr. 4, 2014) ...................................... 25

*Palacios v. Boehringer Ingelheim Pharms., Inc.*,
    No. 10-22398, 2011 WL 6794438 (S.D. Fla. Apr. 19, 2011) ................................... 22

*Prizmic v. Armour, Inc.*,
    No. 05-2053, 2006 WL 1662614 (E.D.N.Y. June 12, 2006) .................................... 17

*Reilly v. Natwest Mkts. Grp.*,
    181 F.3d 253 (2d Cir. 1999) .................................................................................... 14

*Sand v. Greenberg*,
    No. 08-7840 PAC, 2011 WL 1338196 (S.D.N.Y. Mar. 22, 2011) ........................... 25

*Sharma v. Burberry Ltd.*,
    52 F. Supp. 3d 443, 459 (E.D.N.Y. 2014) .............................................................. 16

*Thompson v. Speedway SuperAmerica LLC*,
    No. 08-1107, 2009 WL 130069 (D. Minn. Jan. 20, 2009) ...................................... 19

*Trinidad v. Pret A Manger (USA) Ltd.*,
    962 F. Supp. 2d 545 (S.D.N.Y. 2013) .................................................................... 24

*Vasquez v. Vitamin Shoppe Indus., Inc.*,
    No. 10-8820, 2011 WL 2693712 (S.D.N.Y. Jul. 11, 2011) ..................................... 17

*West v. Border Foods, Inc.*,
    No. 05-2525, 2006 WL 1892527 (D. Minn. July 10, 2006) .................................... 19

*Woodworth v. Erie Ins. Co.*,
    743 F. Supp. 2d 201 (W.D.N.Y. 2010) .................................................................. 14

*Young v. Cerner Corp.*,
    503 F. Supp. 2d 1226 (W.D. Mo. 2007) ................................................................ 18

TABLE OF AUTHORITIES

**Page(s)**

*Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*,
  No. 13-60, 2013 WL 5132023 (E.D.N.Y. Sept. 12, 2013) .......................................................... 22

*Zheng v. Liberty Apparel Co. Inc.*,
  355 F.3d 61 (2d Cir. 2003) ................................................................................................. 19, 21

STATUTES

29 U.S.C. § 213(a)(1) ........................................................................................................... 16, 21

29 U.S.C. § 213(a)(17) ......................................................................................................... 16, 20

OTHER AUTHORITIES

29 C.F.R. § 541.200-606 ............................................................................................................. 16

29 C.F.R. § 541.200 *et seq.* ........................................................................................................ 21

29 C.F.R. § 541.400 *et seq.* ........................................................................................................ 20

Fed R. Civ. P. 23 ......................................................................................................................... 11

Fed R. Civ. P. 26(a) ..................................................................................................................... 12

Fed R. Civ. P. 26(e) ..................................................................................................................... 12

Fed R. Civ. P. 30(b)(6) ................................................................................................................. 3

Fed R. Civ. P. 34 ......................................................................................................................... 12

Fed R. Civ. P. 37 ......................................................................................................................... 14

Fed. R. Evid. 407 ......................................................................................................................... 21

## I.      INTRODUCTION

After settling their claims with their actual employer, Judge Technical Services, Inc.

("Judge"),[1] Plaintiffs Korenblum, Giron, and Webb and their same counsel brought this duplicative

action against Citigroup Inc. ("Citi") as a purported "joint employer" based on the same wage

claims for the same work hours.  Plaintiffs seek a nationwide collective action of over 7,000

individuals despite the fact that they were employed by 40 information technology ("IT") vendors

of Citi's affiliates and had different methods of pay, vastly different jobs and duties, different

supervisors, different hours, over 70 different work locations, and different contacts (if any) with

Citi's affiliates.  Plaintiffs base their motion for certification (the "Motion") on the premise that *Citi*

uniformly paid all of these individuals under a professional day/week "Pay Plan" that allegedly

failed to pay them at all for hours 9 and 10 in a day or hours over 40 in a week.  As Plaintiffs are

aware from their own sworn testimony, however, this premise is false and there is no such common

compensation plan.  The Court thus should deny certification for at least four independent reasons.

*First*, the Court should exercise its discretion to deny the Motion based on Plaintiffs'

discovery abuse and misrepresentations to the Court.  Plaintiffs withheld their signed declarations

addressing the core issues in this action for more than six months, including during the depositions

of two named Plaintiffs.  Even worse, after their depositions contradicted their declarations on

Plaintiffs' central premise – that *Citi* had a ***uniform policy*** of not paying employees for hours 9 and

10 in a day or over 40 in a week – Plaintiffs still filed the declarations as the primary support for

certification knowing they were false and without acknowledging the contradictions.

*Second*, the Motion should be denied because Plaintiffs' own testimony refutes the central

---

[1] *Jones v. Judge Tech. Servs., Inc.*, No. 11-cv-06910 (E.D. Pa. 2011), referenced below as "*Jones*."

premise of the Motion.  All three Plaintiffs testified that ***Citi*** did ***not*** pay them and that ***Citi*** would

***not*** know how their actual employers (e.g., Judge, Citi's vendor) paid them or others.  And

***Korenblum testified that employees of other vendors were paid for hours 9 and 10 each day***,

***Giron testified that he was paid hourly, including for hours 9 and 10 in a day, and Korenblum***

***and Webb testified that even they (and other Judge employees for over the past two years, even***

***before Jones settled) were paid for hours 9 and 10***.  Plaintiffs thus confirmed that the supposed

uniform pay practice they use to tie together the claims of thousands of others does not exist.

 *Third*, Plaintiffs have failed to meet their burden of showing that they and putative collective

action members "together were victims of a ***common*** policy or plan ***that violated the law***" and are

similarly situated ***with respect to facts that matter for determining liability***.  *See Myers v. Hertz*

*Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).  The three Plaintiffs are not even similarly situated to each

other.  Giron was paid for each work hour, including hours 9 and 10, for the maximum FLSA

limitations period, while Korenblum and Webb claim they were not.  Korenblum was an attorney

researching data privacy laws, Giron was a support analyst assisting with telephone system issues,

and Webb was a computer engineer who supported bank financing applications.  Korenblum and

Giron worked at different Citi affiliates' locations, while Webb worked at his home.  Because Giron

was paid an hourly rate for each hour, and Webb and Korenblum were paid an hourly rate for each

hour worked more than two years ago, this Court would need to make a highly individualized

determination of each Plaintiff's status under the computer professional exemption that turns on

their very different job duties.  Plaintiffs also are not similarly situated to thousands of collective

action members in that they were paid differently (e.g., some claim they were not paid for hours 9

and 10 in a day or hours over 40 in a week, others were paid hourly for each hour, and still others

were salaried), they worked for 40 vendors with their own pay practices, they had vastly different

2

job duties, and they worked under very different terms and conditions relevant to determining whether each was employed jointly by a Citi affiliate.

*Fourth*, policy considerations support the Court declining to exercise its discretion to send notice to thousands of others. Plaintiffs' tactic of filing serial collective action litigation contradicts the purpose of collective actions – to promote judicial efficiency. Plaintiffs knew Citi was a potential defendant in *Jones*, as they served Citi with a subpoena and threatened to name it as a party but then did not. Instead, they sat on their claims and now seek to double dip in a second action. To reward Plaintiffs and their counsel with certification here would promote inefficiency.

For any one of these independent reasons, Plaintiffs' Motion should be denied.

## II.   FACTS

### A.   The So-Called Professional Day and Week "Pay Plans" Are In Fact Only Billing Arrangements Between Citi Affiliates And Their IT Vendors.

Citi's affiliates[2] contract with IT vendors whose employees provide various specialized services. Gruppuso Dep. at 17:11-18:23.[3] Some of these workers have a "particular expertise or skill set" offered on an hourly basis at a Citi location, others perform "deliverable-based" project work, and others work on projects "outsource[d]" to a vendor and thus completed away from any Citi location. Gruppuso Dep. at 18:24-19:11.

Plaintiffs seek to represent all employees of all IT vendors that billed Citi under a "Professional Day" or "Professional Week" billing arrangement. Dkt. 73 ("Pls' Mem.") at 1. Plaintiffs repeatedly refer to these arrangements as "Pay Plans" and claim that Citi controls how IT

---

[2] Citi's affiliates are collectively referenced as "Citi" for the Court's convenience. But none of the IT vendors (including Judge) contracted with the only named Defendant and no record evidence suggests Citi could be liable for the alleged actions of its affiliates that were the parties to the contracts. *See infra* at 22.

[3] Pertinent portions of the transcript of the deposition of Citi's Rule 30(b)(6) witness Donna Gruppuso ("Gruppuso Dep.") are attached to the Declaration of Michael J. Puma ("Puma Decl.") as Exhibit ("Ex.") A.

vendors' employees are paid.  *See id.*  In reality, these are only Professional Day/Week ***billing***

arrangements between Citi and its vendors,[4] not ***compensation*** plans between Citi and its vendors'

employees.  Gruppuso Dep. at 21:24-22:4.

> **B.      Plaintiffs Admit That IT Vendors With A Professional Day/Week *Billing*
> Arrangement With Citi Do Not Have A Common *Compensation* Policy.**

Plaintiffs assert that conditional certification is warranted because Citi uniformly "withholds

wages" from employees of all IT vendors billed pursuant to a Professional Day or Week "Pay

Plan."  Pls' Mem. at 1, 6.  But ***all three Plaintiffs admitted this premise is false***.  Korenblum

admitted that employees of some of these IT vendors in fact are paid by their employers for hours 9

and 10 in a day (regardless of whether Citi was in turn billed for those hours):

> Q.      Do you know how they [other workers whose employers utilized a
>          Professional billing arrangement with Citi] were paid?
> A.      I knew some conditions.
> Q.      What were they?
> A.      One person – I don't feel comfortable disclosing – because we don't discuss
>          – I don't know anybody's rate, for example.  Even my close friends we never
>          exchanged that type of information.
>          ***I do know*** through our conversations about discuss[ing] this professional day
>          *that some contracting firms picked up the two hours that Citi wasn't willing
>          to pay and they did pay their employees. Their consultants.*
>                    *   *   *   *
> Q.      *So were they on a professional day plan?*
> A.      *Yes.* Citi – I don't know about the other Citi departments, but our department
>          had a 10 hours professional day.  So we were all under the same rules,
>          everybody.  Employees and consultants.
> Q.      *But for these other individuals from different agencies, although Citi would
>          not pay the agency for those two hours, the agency would still pay the
>          people?*
> A.      *Correct.*

---

[4]  Under the "Professional Day" arrangement, a vendor can bill Citi at 1/8 of a specified daily rate for each hour of work
by that vendor's employees for up to 8 hours in a day, and at 1/8 of a specified daily rate for each hour of work by that
vendor's employees over 10 hours in a day.  Gruppuso Dep. at 63:4-64:8.  Under the "Professional Week" arrangement,
a vendor can bill Citi at 1/40 of a specified weekly rate for each hour of work by the vendor's employees for up to 40
hours in a week.  Gruppuso Dep. at 68:3-69:22.

Korenblum Dep. at 127:13-128:2; 128:16-129:3 (emphasis added).[5]  Indeed, the rate/method of pay for each IT vendor employee is determined by the vendor, not Citi, with some vendors making varying pay determinations for each employee.  Gruppuso Dep. at 180:10-13; Declaration of Nicki McDaniel ("McDaniel Decl.") ¶¶ 3-4.  Korenblum also admits that *since 2013* (more than the full two-year FLSA limitation period for Judge workers she seeks to solicit to join this case and even before she settled with Judge (*Jones*, Dkt. 181)), *Judge paid her and its other employees for hours 9 and 10*:

> Q. So once this change happened in the fall of 2013 for those hours 8 to 10 were you being paid [by Judge] 27.63 an hour?
> A. I'm guessing, yes.

Korenblum Dep. at 183:14-17.

Plaintiff Giron admits that, during even the full potential three-year FLSA limitations period, his payroll records from Judge that he produced show that *Judge paid him for all the hours worked, including hours 9 and 10 in a day and hours over 40 in a week*:

> Q. As you flip through Giron [exhibit] 15 [Giron's payroll records from his employer Judge for the period of October 2011 to October 2012], though, you'll see that there are many weeks where there are hours over 40.
> A. Right.
> Q. And it appears that you got a rate of $30 for all hours over 40.
> A. Okay.
> Q. Would you agree with me?
> A. That's what it appears to be.
> 　　　　＊  ＊  ＊  ＊
> Q. Is the time you reported in [exhibits] 17 [Giron's time records from his employer Judge for the period of October 2012 to June 2013] paid in 18 [Giron's payroll records from his employer Judge for the period of October 2012 to June 2013]?
> A. Yes, they appear to be even.

---

[5] Pertinent portions of the transcripts of the depositions of Plaintiff Paulina Korenblum ("Korenblum Dep."), Plaintiff Freddy Giron ("Giron Dep."), Plaintiff Kenneth Webb ("Webb Dep."), and opt-in Plaintiff Jose Gomez ("Gomez Dep.") are attached as Exs. B-E to the Puma Decl.

> Q.   Okay.  Through the whole thing? Flip through the whole thing and make sure you're comfortable.
>
> A.   Yes, like I said, they appear to be even.  But in my ignorance I never really paid attention to that.  I just put it in and figured they weren't going to be paid.
>
> Q.   ***But you would agree that you were paid an hourly rate for all the hours you recorded?***
>
> A.   ***For what it looks like, yes.***

Giron Dep. at 128:16-24; 177:7-21 (emphasis added); *see also* Declaration of Janice Turano,

("Turano Decl.") ¶¶ 5-7 (confirming Judge paid Giron at a rate of at least $27.63/hour for all

work hours during the three-year limitations period).

Finally, Webb admits that since December 2013 (a year before his settlement with

Judge, *see* Puma Decl., Ex. J), Judge has paid its employees at least $27.63 for all hours:

> Q.   How did your pay with Judge change in December 2013?
>
> A.   ***We were no longer paid zero hours for hours nine and ten. We were paid $27.63 or somewhere around that.***
>
> Q.   And what is your rate of pay for hours other than nine and ten?
>
> A.   The rate for hours other than nine and ten is currently $43.01.
>
> *   *   *   *
>
> Q.   Are you still receiving 27.63 for hours nine and ten?
>
> A.   Yes.

Webb Dep. at 116:6-14; 116:19-21 (emphasis added).

### C.   Plaintiffs Provide No Evidence About 38 Of The 40 IT Vendors, And Very Limited Evidence Regarding Just 2 Of The 40 IT Vendors.

Plaintiffs seek to represent 7,557 individuals who worked at more than 70 locations for more

than 40 different vendors.  Pls' Mem. at 3-4, 11; Dkt. 74-21.  But ***Plaintiffs offer evidence about***

***the alleged pay and alleged control Citi exercised over only a tiny fraction (less than 0.2%) of***

***those workers***.  Pls' Mem. at 5-10.  Plaintiffs offer declarations from only 15 (0.19%) of the 7,557

employees they seek to represent.  Dkt. 74-1 to 74-15.  And those declarants have worked for only 2

(5%) of the 40 vendors at issue (14 worked for Judge and 1 worked for Axelon).  *Id.*  In other

words, other than declarations from employees of Judge – which Plaintiffs say changed its practices

6

to pay hourly for all hours worked over two years ago, and with which Plaintiffs and their counsel already litigated and settled – Plaintiffs have only *one person* to support their Motion on behalf of over 7,000 employees of 39 vendors.  Further, these individuals worked at only 9 (less than 13%) of more than 70 locations (including non-Citi locations) at issue.  *Id.*  Plaintiffs offer *no evidence* about their own duties or those of any individuals they seek to represent.  Pls' Mem. at 18-20.

Even with respect to Judge and Axelon, Plaintiffs offer very limited information.  Korenblum has not been employed by Judge (or assigned to Citi) since June 2014, so she has no knowledge of pay practices for the last two years.  Korenblum Dep. at 111:25-112:12.  And other than a few Judge workers, she has no knowledge of the duties of other employees, how they reported work hours, where they worked, who supervised them, what policies they had to follow, what training they received, or what equipment they used.  Korenblum Dep. at 118:21-120:9.

Giron also has not worked for Judge (or been assigned to Citi) since June 2013, so he has no knowledge of Judge's pay practices for the past three years.  Giron Dep. at 253:5-254:4.  And he has no idea how any other workers were paid.  Giron Dep. at 78:5-9, 91:5-9, 121:10-15.

Although Webb is currently employed by Judge and assigned to Citi, he only has knowledge of a single co-worker (also employed by Judge) throughout the relevant period.  Webb Dep. at 223:25-224:6.  It is not surprising that Webb (who works remotely) knows little about others since he has only been to a Citi location twice during the last four years.  Webb Dep. at 29:23-30:1.

The testimony by the opt-in Plaintiffs similarly sheds little light on the experiences of others.  Opt-in Plaintiff Jose Gomez ("Gomez"), the lone Plaintiff employed by Axelon, "believes" others might have been paid like him, but he admits he never saw their time or pay records.  Gomez Dep. at 20:2-9, 72:21-73:16.  And he knows nothing about the duties or pay of other Axelon employees, even those who worked at the same location as him.  Gomez Dep. at 148:12-149:6.  Similarly, the

7

11 other opt-in Plaintiff declarants state that others worked overtime hours, ***but their declarations say nothing about the duties or pay of those workers***, including whether they were paid for hours 9-10 in a day or over 40 in a week.  *See* Dkt. 74 at Exs. 1-5 ¶ 7, 9-13 ¶ 7, 15 ¶ 8.

  **D.**  **Plaintiffs And The Putative Collective Action Members Were Paid Differently.**

  Citi does not control or even know how its vendors pay their employees.  Gruppuso Dep. at 180:10-180:13; Korenblum Dep. at 111:20-24; Giron Dep. at  84:12-14; Webb Dep. at 124:4-7.[6]  As discussed above, even the three Plaintiffs vary as to how Judge (just one of 40 vendors) paid them.  *See supra* at 4-6.  Citi's other vendors had a variety of compensation plans for their employees billed pursuant to a Professional Day/Week arrangement, including those:  (1) paid for hours 9-10 in a day at a rate of at least $27.63/hour, (2) paid at an overtime rate for all hours over 40 in a week, and (3) paid on a salary basis for all hours.

  By way of example only, ***Apex Systems ("Apex") has paid its IT workers assigned to Citi for all hours worked, including hours 9 and 10 in a day, and some of those workers (treated as non-exempt) time-and-a-half for hours over 40 in a week***.  McDaniel Decl. ¶¶ 4-7.  Another vendor, ***Tata Consultancy Services Limited ("TCS") has paid its IT workers assigned to Citi for all hours (including hours 9 and 10 in a day), with some workers receiving a fixed salary of well over $455 per week and others receiving time-and-a-half for hours over 40 in a week***. Declaration of Uma Sivasubramani ("TCS Decl.") ¶¶ 5, 6, 9, and 10.  As a final example, vendor ***Larsen & Toubro Infotech ("L&T") has paid its IT workers assigned to Citi for all hours, with some receiving a fixed salary of more than $80,000 for all hours worked***.  Declarations of Rajesh

---

[6]  At most, some vendors disclose to Citi a minimum hourly pay rate for their employees, which Citi uses in turn to calculate maximum billing rates.  Gruppuso Dep. at 177:3-9.  But the vendor is free to classify the employee as exempt or non-exempt and may pay him or her in any way (salaried, hourly, etc.), including at a higher rate for some or all hours as required by law, regardless of what is billed to Citi.  *See id.*

Tatooskar, Rahul Gadgil ¶ 5, Francis Fenelon ¶ 5, and Zaheer Samnani ¶ 5 (the "L&T Decls.").

      **E.**       <u>**Plaintiffs And Putative Collective Action Members Performed Varying Duties.**</u>

Plaintiffs seek to represent a sprawling group of all "IT employees."  Compl. ¶ 34; Pls'
Mem. at 11.  But they cannot agree on what constitutes an "IT employee."  *Compare* Korenblum
Dep. at 54:4-55:22 (was "IT employee" merely because the data privacy department she performed
services for as a lawyer was in IT organization) *with* Giron Dep. at 192:5-193:2 ("IT employee" is
one who "knows how to fix" technology) *and* Webb Dep. at 170:18-171:11 ("IT employee" is one
who "works in information technology," i.e., the "storage, transport [or] processing of
information").  Not even Korenblum – a lawyer who researched data privacy laws – would meet her
co-Plaintiffs' definition of an "IT employee" because she did not "fix" technology or work in the
"storage, transport [or] processing of information."  *Id.*; Korenblum Dep. at 23:1-9; 56:17-58:8.

     The confusion among the named Plaintiffs is not surprising because the putative collective
action members performed a wide variety of tasks, such as "computer programming, organizing
conference calls, data analytics, IT support, researching foreign privacy laws, monitoring computer
systems, testing computer systems, maintenance of computer systems, monitoring phone systems,
and maintenance of phone systems . . . ."  Declaration of Donna Gruppuso ("Gruppuso Decl.") ¶ 10;
*see also* Declaration of Nicholas Marra ("Marra Decl.") ¶ 7.  For example, some holding the title of
Application Programmers maintained reporting services and reviewed code; other Application
Programmers generally engaged in application coding, testing, debugging and implementation;
others held the title of Business Systems Consultant and some in that role identified statistical
programmers to write code.  Gruppuso Decl. ¶¶ 11-18 (citing other examples).  Differences among
just the Plaintiffs are telling:

| **Korenblum** | **Giron** | **Webb** |
|---|---|---|
| Is *a lawyer who did not do programming or coding or fix computers* – Korenblum Dep. at 23:1-9; 59:22-60:6. | Starting in March 2011, worked as an Avaya Support Analyst – Giron Dep. at 106:20-23; 113:23-114:7. | Has a degree in computer science – Webb Dep. at 74:19-74:19. |
| Was assigned to work within Citi's data privacy group – Korenblum Dep. at 56:17-18. | During this assignment, *he fixed telephone systems* – Giron Dep. at 114:8-10. | Performs the duties of an *application engineer or application manager* – Webb Dep. at 48:18-48:22. |
| Researched other country's data privacy laws and regulations – Korenblum Dep. at 58:6-58:8. | In October 2012, Giron began a new assignment as a Cisco Level 2 – Giron Dep. at 132:7-18. | He was originally responsible for 4 applications, but now is responsible for approximately 60 applications – Webb Dep. at 49:3-8. |
| Devised data privacy controls for Citi's international counterparts – Korenblum Dep. at 59:2-59:7. | He had responsibility for Citi's bank branches and ATMs in Latin America and would work on and resolve issues to ensure the banks and ATMs were up and running – Giron Dep. at 148:7-17; 149:23-150:22. | He uses software to plan, schedule, and follow-up on vulnerability assessments for these applications and runs disaster recovery testing – Webb Dep. at 197:3-8; 211:15-23. |
| "Monitor[ed], interpret[ed] and advise[d] on regulatory requirements concerning data protection and multijurisdictional data transfers, bank secrecy, COB, outsourcing, insourcing, third party risk" – Korenblum Resume, P00851-853, attached to the Puma Decl. as Ex. F. | Managed "break fix vendor/carrier problems," "[i]mplemented and maintained Cisco routers and switches," and "[l]oad balanced traffic towards servers and maintain stability" – Ex. 20 to Giron Dep., attached to the Puma Decl. as Ex. G. | "Design[s] and maintain[s] application architecture diagrams, design[s] documents and descriptions of data flow and connection protocols"; "[d]evelop[s] and maintain[s] critical action plans for upgrades" – Ex. 13 to Webb Dep., attached to the Puma Decl. as Ex. H. |

In contrast, the only opt-in Plaintiff to testify (Gomez) was a classic programmer writing code.

Gomez Dep. at 107:10-109:9.  *Plaintiffs offer no evidence regarding the duties of any of the thousands of "IT employees" they seek to represent*.[7]

---

[7] Plaintiffs maintain that these thousands of collective action members nevertheless are "readily ascertainable" through Citi records of workers for which vendors were billed under a professional day or week arrangement.  Pls' Mem. at 10-11.  This is untrue.  Plaintiffs vaguely define the collective action as "IT employees . . . paid on a 'Professional' pay plan and [who] performed overtime work without receiving all wages owed."  Compl. ¶ 34.  The Court cannot

**F.      Plaintiffs And The Putative Collective Action Members Had Different
         Experiences With Respect To Plaintiffs' Theory Of Joint Employment.**

Contrary to Plaintiffs' claimed uniform experience in boilerplate, conclusory assertions that

Citi "supervised and controlled" their schedules and assigned them tasks (Dkt. 74 at Exs. 1-4, 7, 10-

12 ¶ 11; 5, 13-14 ¶ 10; 9-12 ¶ 12), there are material differences in the alleged "control," if any, by

Citi.  Only those assigned to perform services at Citi locations and/or who have access to Citi's

systems are subject to "security clearance" procedures due to regulatory requirements.  Gruppuso

Decl. ¶ 20.  Other individuals provide services from their employer's facilities and do not have Citi

system access and thus are not subject to the supposedly common security procedures because they

never set foot in a Citi facility.  Gruppuso Decl. ¶¶ 20, 23.  And some who Plaintiffs seek to

represent did not have access to Citi's facilities, use its equipment, or have a Citi email address or

ID badge.  Gruppuso Decl. ¶ 21.  Further, interaction (if any) between Citi's employees and IT

vendors' employees varies.  Gruppuso Decl. ¶¶ 22, 23.  For instance, Webb works from his home

and ***has only been to a Citi location twice in years***.  Webb Dep. at 29:11-30:4, 240:5-10.  Further,

Plaintiffs, as well as the other opt-in declarants, all had different points of contact at Citi.  *See* Dkt.

74 at Exs. 1-4, 7, 10-12 ¶ 10; 5, 13-14 ¶ 9; 6 ¶ 13; 8-9, 15 ¶ 11.

**III.    ARGUMENT**

**A.      The Court Should Deny Conditional Certification Because Plaintiffs Engaged In
         Discovery Abuse And Submitted Knowingly False Declarations.**

Plaintiffs signed the declarations they submitted in support of their Motion, which included

---

determine who meets this definition because determining who was an "IT employee" requires an individualized inquiry
and determining who was not paid all wages owed requires an individualized inquiry, based on the duties and wages,
into the merits of whether a non-exempt employee was paid time-and-a-half for overtime and whether an exempt
employee met the computer professional, administrative, or other white-collar exemptions.  *See, e.g.*, *Burley v. City of
New York*, No. 03-735, 2005 WL 668789, at *9 (S.D.N.Y. Mar. 23, 2005) (denying motion for Rule 23 class
certification because the proposed class definition was "too vague to be clearly ascertainable").

11

the caption of this case, in June and July 2015.  Dkt. 74-6, 74-7, 74-14.  In their declarations, Plaintiffs stated under oath that they were paid **by Citi** and that ***Citi failed to pay them for certain hours***.  *See infra* at 13-14.  But Plaintiffs failed to identify the declarations in Rule 26(a) disclosures, which they served on November 6, 2015.  Puma Decl. ¶ 11.  They also failed to produce them in response to Defendants' document requests, which were due on December 3, 2015,[8] although the declarations are plainly responsive to Request Nos. 7, 14 & 22.  Puma Decl. ¶¶ 16-17.  They did not even produce them at their depositions when asked about prior testimony or otherwise.  Instead, Plaintiffs knowingly withheld their declarations for over six months – despite a Federal Rule 26(e) obligation to supplement their discovery – and finally produced them on January 19, 2016, a week before the close of discovery and only after the depositions of Korenblum and Giron.  Accordingly, the Court should deny conditional certification because Plaintiffs withheld these declarations for no valid reason, apparently to deprive Citi of the opportunity to test them through depositions.  *Cf. Morales v. Plantworks, Inc.*, No. 05-2349, 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006) (noting the court's "broad discretion" to make determinations with respect to conditional certification).

In addition to engaging in serious discovery abuse, the Court should deny conditional certification because Plaintiffs submitted false testimony and made misrepresentations to the Court. Through their Motion and declarations, Plaintiffs would have this Court believe that Citi "uniformly withholds wages for 'unbillable work time' worked by Pay Plan Workers," including hours 9 and 10 in a day and over 40 in a week.  Pls' Mem. at 5-6.  But Plaintiffs' depositions contradict their

---

[8] Plaintiffs were served with discovery by hand on November 3, 2015, so any objections were due on December 3, 2015.  Puma Decl. ¶ 16; Fed R. Civ. P. 34.  But Korenblum and Giron did not object or respond until December 4, 2015.  Puma Decl. ¶ 17.  Thus, Plaintiffs waived any purported objections to the requests seeking the declarations.

Motion and declarations on these critical issues before the Court, and they made no disclosure of

that testimony in their Motion intended to allow solicitation of thousands of others to assert claims

based on a false premise for certification:

| Issue | Giron Declaration Statement | Giron Deposition Testimony |
|---|---|---|
| Who paid? | Stating that "Citi paid me," Giron Decl. ¶¶ 7-8. | "Q. And no one at Citi knew how Judge paid you? A. No." <br> "Q. Did you ever receive any pay from Citi in this position [Avaya Support Analyst]? A. No, ma'am." <br> "Q. During the time that you were working as an Avaya support analyst, were you always paid by Judge? A. Yes. Never received a paycheck from Citi? A. No." <br> "Q. During the time you worked as a level 2, were you always paid by Judge? A. Yes. Q. Ever paid by Citi? A. No." <br> "Q. Did Citi ever pay you? A. For what? Q. Give you a paycheck, during this time? A. Never got a paycheck from Citi."  Giron Dep. at 84:12-14; 108:2-4; 130:3-9; 159:12-16; 180:4-9. |
| Paid for all hours? | Stating that he received no pay for "hours over twelve in day" and no pay for "hours forty through fifty each week," and no pay "for unbillable hours worked," Giron Decl. ¶¶ 7-9. | "Q. But you would agree that you were paid an hourly rate for all the hours you recorded? A. For what it looks like, yes." <br> "Q. It's not that you got no compensation for those hours, just you don't think it was the proper compensation? A. Right. Overtime." Giron Dep. at 177:18-21; 188:19-23. |
| Issue | Webb Declaration Statement | Webb Deposition Testimony |
| Who paid? | Stating that "Citi paid me," Webb Decl. ¶ 4. | "I don't believe that I have any knowledge or information that says that Citi directly orders Judge and tells them what to pay me . . . ." Webb Dep. at 124:4-7. |
| Paid for all hours? | Stating that he was paid "nothing for hours over forty each week" and was "paid nothing for the unbillable hours worked," Webb Decl. ¶¶ 4-5. | "Q. How did your pay with Judge change in December 2013? A. We were no longer paid zero hours for hours nine and ten. We were paid $27.63 or somewhere around that."  Webb Dep. at 116:6-10. |
| Issue | Korenblum Decl. Statement | Korenblum Deposition Testimony |
| Who paid? | Stating that "Citi paid [me]," Korenblum Decl. ¶ 5. | "Q. Do you have any information to suggest that Citi knew what Judge was actually paying you? A. No, I don't know that at all.  I have no |

| | | information about that." Korenblum Dep. at 111:20-24. |
|---|---|---|
| Paid for all hours? | Stating that she was paid "nothing for hours 40 and 50 each week" and that she was "required to record every hour . . . [but] was paid nothing for unbillable hours worked" and also "routinely worked approximately 10-18 hours of overtime a week, but was not paid for that work," Korenblum Decl. ¶¶ 5-7. | "Q. So once this change happened in the fall of 2013 for those hours 8 to 10 were you being paid 27.63 an hour? A. I'm guessing, yes." Korenblum Dep. at 183:14-17. |
| Knows about others? | "My manager John Gunther at Citi told me that I had to work at least 10 hours a day and 50 hours a week.  To my knowledge, all of the other information technology workers were under the same requirement."  Korenblum Decl. ¶ 15. | "Q. Other than these Judge folks who were at Citi along with you in your group that you talked about, did you have any knowledge of the duties performed by other Judge employees in other parts of Citi? A. No. Q.  Do you have any knowledge of how they reported their time? A. No. Q. Or how they were paid? A.  No.  Q. Do you know where they worked? A. No." Korenblum Dep. at 118:21-119:9. |

The stark differences between Plaintiffs' declaration and deposition testimony on these critical issues are remarkable.  These are not nuanced variations but rather a complete change in position on the fundamental questions of whether Plaintiffs were paid for all hours, whether Citi paid them, and what they know about other employees.  These false statements cannot support conditional certification or else they would encourage similar abuse by plaintiffs and their counsel. Accordingly, the Court should deny conditional certification based on Plaintiffs serious discovery abuse and submission of false testimony regarding the central premise of their Motion.[9]

---

[9] At a minimum, the Court should disregard Plaintiffs' declarations based on their discovery abuse and false statements confirmed by their depositions.  *See Reilly v. Natwest Mkts. Grp.*, 181 F.3d 253, 267 (2d Cir. 1999) ("Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses."); *Woodworth v. Erie Ins. Co.*, 743 F. Supp. 2d 201, 215 (W.D.N.Y. 2010) ("[W]here a party fails to disclose information in response to discovery demands, fails to explain such failure, and never asks to reopen discovery, a court does not abuse its discretion in precluding the evidence."); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 159-60 (S.D.N.Y. 2008) (refusing to rely on declarations submitted in support of certification, as they were inconsistent with depositions and thus not reliable); *F.D.I.C. v. Wrapwell Corp.*, No. 93-859, 2002 WL 14365, at *16-

B.      **Plaintiffs Fail to Meet Their Burden To Show That IT Vendor Employees**
         **Subject To So-Called Professional "Pay Plans" Are Similarly Situated.**

1.      *The Standard For Certification Is Meaningful And Fact-Based.*

Section 216(b) does not define "similarly situated," so this Circuit, relying on *Hoffmann-La*

*Roche, Inc. v. Sperling*, 493 U.S. 165 (1989), established a two-step analysis.  *Myers*, 624 F.3d at

555.  Conditional certification requires a "***factual showing*** that [Plaintiffs] and potential opt-in

plaintiffs together were victims of a ***common*** policy or plan ***that violated the law***" and, critically,

that "factual showing ***cannot be satisfied simply by unsupported assertions***."  *Id.* (emphasis added).

It is thus axiomatic that Plaintiffs must show that the thousands of IT vendor employees

***actually*** are similarly situated not just that they ***may*** be.  *See Fraticelli v. MSG Holdings, L.P.*, No.

13-6518, 2014 WL 1807105, at *4 (S.D.N.Y. May 7, 2014) (Furman, J.) (denying conditional

certification where plaintiff failed to meet burden under *Myers* to show a "common policy or plan

that violated the law," and noting other decisions misapplied the standard by authorizing notice on a

showing that class members "may" be similarly situated).  Recognizing the thin evidentiary support

for their Motion, Plaintiffs fall back on the plea that their burden at this stage is "minimal."  Pls'

Mem. at 13.  But this Court has seen that argument and cautioned that "while plaintiff's burden at

this stage is modest, it is not non-existent."  *Fraticelli*, 2014 WL 1807105, at *1.

The Second Circuit further addressed conditional certification in *Glatt v. Fox Searchlight*

*Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016), a controlling decision litigated by Plaintiffs'

counsel that their Motion fails to even acknowledge.  *Glatt* vacated conditional certification because

---

17 (S.D.N.Y. Jan. 3, 2002) (striking portions of affirmation due to "inconsistencies between [affiant's] deposition and affirmation testimony"); *Newport Elecs. v. Newport Corp.*, 157 F. Supp. 2d 202, 219-20 (D. Conn. 2001) (striking portions of affidavit that "contradict[] statements in his deposition").  This result is easily justified here.  ***This was not just any discovery.  These were sworn declarations by the Plaintiffs regarding the most critical fact issues in the case, including who paid them, whether they were paid for all work hours, and whether they had knowledge of others they seek to represent.***

15

none of the "common proof" addressed the key liability questions. 811 F.3d at 540. The evidence left "the most important question" unable to "be answered with generalized proof." *Id.* at 539. Under *Glatt*, a district court abuses its discretion by granting conditional certification absent "common proof" answering the key liability questions without individualized experiences. *Id.* at 540. In sum, the Court should apply a meaningful standard that requires actual facts evidencing an unlawful policy susceptible to common proof on the material facts pertinent to FLSA liability.

## 2. *Plaintiffs' Own Testimony Confirms There Is No Common, Unlawful Compensation Policy That Violates The Law.*

To evaluate certification, courts consider how Plaintiffs' claims would be established. *Myers*, 624 F.3d at 548-49. Plaintiffs claim so-called "Pay Plan Workers" are not overtime exempt under the computer professional exemption because they were subject to a common practice of not being paid at a rate of "at least $27.63 per hour **for each hour worked**" (including hours 9 and 10). Pls' Mem. at 15. But Plaintiffs have not met their burden of establishing this common practice.

Rather, Plaintiffs' own depositions established that there is no common compensation policy because employees of other vendors were paid for all hours, Giron was paid hourly for all hours, Korenblum and Webb were paid for all hours after December 2013, and all Judge employees were paid for all hours since 2013. *See supra* at 4-8. Consistent with Korenblum's admission that IT vendors other than Judge paid their employees for all hours worked, other vendors did, in fact, pay employees at least $27.63 per hour for all hours worked or on a salary basis – thereby allowing these employees to satisfy the computer professional, professional, administrative, highly compensated employee, and/or other exemptions. *See supra* at 8-9; 29 U.S.C. § 213(a)(1), (17); 29 C.F.R. § 541.200-606. In sum, Plaintiffs' central premise for their Motion is refuted by Plaintiffs themselves, which warrants denial of the Motion. *See Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443,

16

459 (E.D.N.Y. 2014) (denying nationwide certification absent evidence of a nationwide common

policy/plan that violated the law); *Prizmic v. Armour, Inc.,* No. 05-2053, 2006 WL 1662614, at *3

(E.D.N.Y. June 12, 2006) (finding employees not similarly situated where "plaintiff has not

submitted *any* evidence by affidavit or otherwise to demonstrate that he and other potential

plaintiffs were victims of a common policy or plan that violated the law"); *Hinojos v. Home Depot,*

*Inc.*, No. 06-00108, 2006 WL 3712944, at *2 (D. Nev. Dec. 1, 2006) (denying conditional

certification where evidence "belie[d] the existence of any common practice" tying plaintiffs with

other employees).[10]

### 3.   *Plaintiffs Are Not Similarly Situated To Each Other.*

Putting aside the thousands of others, Plaintiffs have failed to establish that they are even

similarly situated to each other.  Giron was paid for each hour of work, including hours 9 and 10,

for the maximum FLSA limitations period, while Korenblum and Webb (at least prior to December

2013) claim that they were not.  *See supra* at 4-7.  Further, Plaintiffs had a wide variety of duties.

As noted above, Korenblum was a lawyer who researched data privacy laws, Giron was a telephone

and systems support analyst, and Webb was an applications engineer.  *See supra* at 10.  Further,

Korenblum and Giron worked at a Citi location, while Webb worked remotely, and all three had

---

[10] Citi has never "classified" employees of IT vendors under the FLSA (*see* Pls' Mem. at 5, 15), either as exempt or
non-exempt, because Citi neither employs nor pays them.  *See supra* at 3-4, 13-14.  Plaintiffs cite to Defendant's
Answer to claim that Citi classified vendors' employees, but neither cited paragraph suggests that Citi did so.  *See*
Answer, Dkt. 47 ¶ 18 (stating lack of knowledge about other entities for whom Plaintiffs may have provided services
and denying Plaintiffs were "assigned to work exclusively for Citi, where they reported to a Citi manager"), ¶ 41
(denying Plaintiffs' legal conclusion that all employees are entitled to overtime because "for instance, exempt
employees are not entitled to overtime").  Further, Plaintiffs have no idea who classified them as exempt or non-exempt.
Korenblum Dep. at 88:12-5; Giron Dep. at 195:12-17; 174:15-35.  Even if Plaintiffs were correct that Citi classified
them as "exempt," and they are not, a uniform classification "is not by itself sufficient to constitute the necessary
evidence of a common policy, plan or practice" that renders all putative collective members as "similarly situated"
because the classification may be legal for some.  *Vasquez v. Vitamin Shoppe Indus., Inc*., No. 10-8820, 2011 WL
2693712, at *4 (S.D.N.Y. July 11, 2011).  *See also Ikikhueme v. CulinArt, Inc.*, No. 13-293, 2013 WL 2395020, at *2-3
(S.D.N.Y. June 3, 2013) (Furman, J.) (denying conditional certification because allegation that all chefs were
misclassified was insufficient to show they were similarly situated).

different points of contact at Citi and thus different "supervision" experiences.  *See supra* at 11.

These differences matter to how their claims would be litigated.  *See Myers*, 624 F.3d at 555.

Because Giron was paid an hourly rate for each hour worked, and Webb and Korenblum
were paid an hourly rate for each hour worked after Judge paid them all hours more than two years
ago, this Court would need to make a highly individualized exemption determination for each
Plaintiff under the computer professional exemption that turns on their very different job duties.
*See, e.g.*, *Young v. Cerner Corp.*, 503 F. Supp. 2d 1226, 1231 (W.D. Mo. 2007) (denying
conditional certification and noting that whether employee was an exempt computer professional
would involve a review of her duties); *Clarke v. JPMorgan Chase Bank*, N.A., No. 08-2400, 2010
WL 1379778, at *16 (S.D.N.Y. Mar. 26, 2010) (noting that because "job titles vary widely and
change quickly in the computer industry," an inquiry into individual job duties is necessary to
determine the applicability of the computer employee exemption).  Further, Giron had several Cisco
certifications.  Giron Dep. at 222:17-223:16.  This is more individualized evidence that courts have
found relevant to the computer employee exemption.  *See Clarke*, 2010 WL 1379778, at *17
(relying, in part, on technical certifications in applying computer employee exemption); *Bobadilla
v. MDRC*, No. 03 Civ. 9217, 2005 WL 2044938, at *7 (S.D.N.Y. Aug. 24, 2005) (applying
computer employee exemption where employee held "valuable" computer certifications).

Finally, because Plaintiffs interacted with different contacts at Citi affiliates, and Webb
uniquely worked from home, whether each was jointly employed by Citi similarly would
necessarily turn on highly individualized facts unsuitable for collective adjudication.[11]

---

[11] The Second Circuit employs a "totality of the circumstances" approach to joint employment considering factors such
as whether the alleged employer has the power to hire and fire, supervises or controls work schedules or conditions of
employment, determines the rate and method of pay, and maintains employment records; whether the alleged joint
employer's premises and equipment are used; whether the immediate employer has a business that could or did shift

### 4.   *Plaintiffs And Those They Seek To Represent Are Not Similarly Situated.*

Plaintiffs also fail to establish that they are similarly situated to the thousands of putative collective action members.  Plaintiffs purport to represent 7,557 others, but they have produced declarations from only 15 (0.19%) of them, who were employed by only 2 of the 40 vendors (5%), and worked at only 9 (less than 13%) of over 70 locations.  *See supra* at 6-7.  Putting aside the declarations from employees of Judge, which settled with Plaintiffs and changed its pay practices more than two years ago, all that is left is a single opt-in Plaintiff declaration from Gomez.  He is an employee of just 1 of the 39 remaining vendors who employed more than 7,000 putative collective action members.  And Gomez was not aware of how others were paid.  *See supra* at 7-8.  This type of evidence is woefully insufficient to authorize such sprawling notice.  *See Nabi v. Hudson Grp. (HG) Retail, LLC*, 310 F.R.D. 119, 123 (S.D.N.Y. 2015) (denying conditional certification where plaintiffs' declarations showed personal knowledge of only 37.5% of the managers at issue).[12]

Further, the declarations Plaintiffs submit state in conclusory and boilerplate fashion that they "know" of others who "worked" on a "Professional Pay Plan" based on alleged "discuss[ions]" with those workers.  *See* Dkt. 74, Ex. 2-5, ¶ 7; 7-13, ¶ 7; 16 ¶ 8.  But the declarations say nothing about how more than 7,000 workers were ***actually paid***, let alone the foundation as to how the

from one putative joint employer to another; the extent to which the alleged employees performed discrete line jobs that were integral to the alleged joint employer; whether responsibilities under the contract could pass from one subcontractor to another without material changes; and whether the alleged employees worked exclusively or predominately for the alleged joint employer.  *See Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 67-68 (2d Cir. 2003).

[12] *See also Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 800 (S.D.N.Y. 2012), *adopted*, No. 09-9575, 2012 WL 2588771 (S.D.N.Y. July 2, 2012) (declarations from 5 managers from 10 stores was insufficient to show all managers at 820 stores were similarly situated); *Thompson v. Speedway SuperAmerica LLC*, No. 08-1107, 2009 WL 130069, at *8 (D. Minn. Jan. 20, 2009) (sampling of under 1% of putative collective action members allegedly required to work "off-the-clock" fails to show "widespread FLSA violations"); *West v. Border Foods, Inc.*, No. 05-2525, 2006 WL 1892527 at *6 (D. Minn. July 10, 2006) (denying conditional certification where evidence showed 2.5% of putative collective action members worked off-the-clock); *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 870-71 (S.D. Ohio 2005) (averments from 0.67% of employees who claimed FLSA violations were insufficient to support conditional certification); *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003) (evidence of pay practices for only 4% of employees at issue did not show a common policy or plan that violated the FLSA).

19

declarants would know anything about them.  This is precisely the type of "unsupported assertion" that the Second Circuit, this Court, and others have found insufficient for conditional certification.  *See Myers*, 624 F.3d at 555; *Fraticelli*, 2014 WL 1807105, at *3.[13]  Plaintiffs' case for certification is even weaker though since their depositions refute the assertion central to their Motion – that Citi uniformly did not pay employees for hours 9 and 10 per day and over 40 per week.  *See supra* at 4-6.

Consistent with Giron's testimony that he was paid for all hours worked, and Korenblum's testimony that she was aware of other IT vendor employees who were paid for all hours worked, *see supra* at 4-6, others were subject to varying compensation arrangements with dozens of IT vendors.  *See supra* at 8-9.  For those employees paid a fixed rate for all hours, including hours 9 and 10 each day and over 40 each week, *see supra* at 4-6, 8-9, each could meet the computer professional exemption depending upon his/her job duties.  *See* 29 U.S.C. § 213(a)(17); 29 C.F.R. § 541.400 *et seq*.  For those employees who were paid for all hours worked and time-and-a-half for hours over 40, *see supra* at 8-9, each would have no claim to overtime.  And for employees paid a fixed weekly salary, *see supra* at 8-9, each could meet the computer professional, administrative, executive, professional, combination, or highly compensated[14] exemptions depending upon his/her particular

---

[13] *See, e.g.*, *Nabi*, 310 F.R.D. at 123 (denying conditional certification where declarations showed "personal knowledge or observation of [only] three management positions" and were "devoid of specific information about the actual duties performed by managers" in other jobs); *Boutros v. JTC Painting & Decorating Corp.*, No. 12-7576, 2013 WL 3110943, at *3 (S.D.N.Y. June 19, 2013) (denying conditional certification where declarations provided "vague and conclusory statements that fail to specifically identify the other managers who are allegedly similarly situated to plaintiff"); *Trinh*, 2008 WL 1860161, at *4 (denying conditional certification when plaintiffs provided "no real evidence, beyond their own speculative beliefs").

[14] It is also notable that Plaintiffs were highly paid.  For example, at an hourly rate of $63/hour, Korenblum's annualized pay, assuming she worked 2080 hours, was $131,040.  Korenblum Dep. at 182:21-23.

job duties.  29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.200 *et seq*.  In other words, how each of the more than 7,000 purported collective action members individually was paid matters critically for purposes of adjudicating each member's FLSA overtime claim.  *See Myers*, 624 F.3d at 555.[15]

Additionally, the duties of these thousands of individuals are vastly different.  *See supra* at 9-10.  The Court would need to make a highly individualized analysis into the exemption status of thousands of putative collective action members under the computer professional and other applicable exemptions, which turn on the different job duties each performed.  *See supra* at 18.[16]

Finally, imposing joint employer liability on Citi would require an inquiry into the relevant individualized facts for each putative collective action member that turn on the multi-factor *Zheng* test discussed *supra* at n. 11.  Likely realizing this, Plaintiffs claim Citi has uniform "on-boarding" policies and requires "Pay Plan Workers" to "be fingerprinted and pass Citi's security clearances." Pls' Mem. at 7-8.  This is simply untrue.  *See supra* at 11.  And if this alone established joint employment, the federal government would be a "joint employer" of every contractor allowed entry

---

[15] Plaintiffs note that Citi eliminated the use of "Professional Pay Plans" – again, actually just a billing arrangement – for some vendors in January 2016.  *See* Pls' Mem. at 10.  This is irrelevant because these are vendor **billing** arrangements and not **compensation** practices, which are controlled by the vendors rather than Citi.  *See supra* at 4, 8-9. In any event, even if Citi changed any compensation practices, any consideration of post-lawsuit changes would "run afoul of Fed. R. Evid. 407's exclusion of evidence of subsequent remedial measures to prove liability . . . ."  *Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 10-592, 2011 WL 4351631, at *9 (W.D.N.C. Sept. 16, 2011); *see also Holick v. Cellular Sales of New York, LLC*, No. 13-738, 2014 WL 4771719, at *3 (N.D.N.Y. Sept. 24, 2014) (recognizing that subsequent remedial measures cannot be admitted as evidence to establish a violation of the FLSA); *Liger v. New Orleans Hornets NBA Ltd. P'ship*, No. 05-1969, 2008 WL 348800, at *2 (E.D. La. Feb. 6, 2008) (holding that post-lawsuit behavior is insufficient to support plaintiffs' FLSA claims).

[16] Plaintiffs make the curious statement that the Court should not consider the wide variety of duties performed by those they seek to represent because Plaintiffs "are not challenging the duties" component of the computer employee exemption test.  Pls' Mem. at 18.  Plaintiffs are wrong because the duties of the putative collective action members are highly relevant to their exemption status.  For many of them who were paid at least $27.63/hour for each hour worked, a consideration of their individual duties will be necessary to determine whether they qualify for the computer employee exemption, and for others who were paid on a salary basis, a consideration of their individual duties will be necessary to determine whether they also qualify for any of the white collar exemptions.  *See supra* at 8-9.  The vast array of duties performed by the putative collective action members further shows that they are not similarly situated with respect to the facts that matter for the purposes of determining liability.

to perform services in a secure federal building, which requires security clearance.

Plaintiffs fare no better with the boilerplate statements in the 15 declarations they submitted regurgitating the test for joint employment, which is insufficient for conditional certification.  *See, e.g.*, Dkt. 74 at Exs. 1-4, 7, 10-12 ¶11; 5, 13-14 ¶10; 9, 15 ¶12 (repeating blanket assertion that "Citi supervised and controlled my work schedule); Dkt. 74 at Exs. 2-3, 9, 12 ¶16; 4, 7 ¶15; 5 ¶ 13; 10-11, 13 ¶14; 15 ¶17 (repeating blanket assertion that "Citi had the power to fire me"); *Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*, No. 13-60, 2013 WL 5132023, at *6 (E.D.N.Y. Sept. 12, 2013) (denying conditional certification based on "conclusory and unsubstantiated statements"); *Morales v. Plantworks, Inc.*, No. 05-2348, 2006 WL 278154, at *1 (S.D.N.Y. Feb. 2, 2006) (finding that conclusory allegations preclude collective action); *Palacios v. Boehringer Ingelheim Pharms., Inc.*, No. 10-22398, 2011 WL 6794438, at *5 (S.D. Fla. Apr. 19, 2011) (holding that "three almost identical, cut-and-paste declarations" were "insufficient to [establish] that other [employees] have similar job requirements" for conditional certification).  Moreover, for the thousands of other putative collective action members, Plaintiffs offer no evidence at all on their theory of joint employment.  This is not surprising because others did not work at Citi locations, use Citi equipment, have Citi emails or IDs, and/or interact regularly with Citi.  *See supra* at 11.  Thus, individualized facts will determine whether each Plaintiff and putative collective action member could be considered a Citi employee.

Even worse, the only named Defendant here ***was not even a party*** to any contracts with IT vendors who employed the Plaintiffs and those they seek to represent.  Gruppuso Decl. ¶ 4.  Rather, Citi affiliates (who are not Defendants) were the contracting parties.  Gruppuso Decl. ¶ 4.  Plaintiffs are well aware of that fact given that Citi produced the contracts to them.  Yet, Plaintiffs failed to amend their Complaint to name the right parties.  Plaintiffs took no follow-up discovery on this

22

issue and thus offer no evidence of the relationship between Citi and those entities to suggest that the only Defendant in this case possibly could be liable for the alleged actions of its affiliates.

In sum, Plaintiffs have not even come close to meeting their burden of establishing that they and more than 7,000 others are similarly situated as to facts that matter for determining liability.

**C.     The Court Should Deny Conditional Certification Because Plaintiffs' Litigation Tactics Do Not Promote Judicial Efficiency.**

Sound policy reasons also support denying conditional certification here.  It is well-established that the touchstone for conditional certification is judicial efficiency.  *See Hoffmann-La Roche*, 493 U.S. at 170; *Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 489 (S.D.N.Y. 2009).  Collective actions are intended to enable the "efficient resolution in ***one proceeding*** of common issues of law and fact."  Pls' Mem. at 12 (emphasis added).  But Plaintiffs instead pursued piecemeal litigation.  After settling a collective action with their actual employer in *Jones*, Plaintiffs sought a ***second recovery*** against Citi here for the ***same wage claims***, the ***same hours worked***, and the ***same alleged pay plan***.  This is the antithesis of judicial efficiency.

Plaintiffs made the same allegations in *Jones*[17] that they were not paid for certain hours due to a so-called "Professional Pay Plan."[18]  Plaintiffs had the same class counsel in *Jones*: David Cohen and Stephan Zouras LLP.  The *Jones* plaintiffs sought and received third-party discovery from Citi, and threatened to join Citi as a party.  Puma Decl. ¶ 2.  In sum, Plaintiffs were well aware they could seek relief from Citi as well based on a joint employment theory and yet declined to name Citi at any stage in *Jones*.  Rather, they settled with Judge after years of litigation (*see* Puma

---

[17] *See* Plaintiffs' Opt-In Forms, *Jones* Dkt. 24-1, 116-3, 118-1, attached to the Puma Decl. as Exs. K-M.

[18] Citi refers the Court to its Motion to Dismiss where it showed how the allegations in Plaintiffs' Complaint here are nearly identical to those in the *Jones* Complaint.  Dkt. 26 at 11-12.

Decl. Ex. J) and now seek to double dip for the same claims.[19]

Plaintiffs should not be rewarded for, and encouraged to continue, their piecemeal litigation contrary to judicial efficiency. *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 556 (S.D.N.Y. 2013) ("The court's discretionary power to facilitate the sending of notice to potential class members is premised on ***its use as a tool for efficient case management.***") (emphasis added). For this reason too, the Court should not exercise its discretion to grant conditional certification.

> **D.     If the Court Grants Conditional Certification At All, Which It Should Not, It Should Limit Notice To Only Certain Judge Employees.**

Courts have limited conditional certification and notice to only those members of a putative collective action for which there is competent evidence of a common violation. *See, e.g.*, *Rudd*, 2011 WL 831446, at *9-10 (conditionally certifying collective action only at declarants' location); *Hens v. ClientLogic Operating Corp.*, No. 05-381, 2006 WL 2795620, at *4-5 (W.D.N.Y. Sept. 26, 2006) (despite over 60 declarations supporting allegations of nationwide off-the-clock work, notice limited to 4 cities where declarants worked). Here, dozens of vendors employed thousands of workers, but Plaintiffs offer evidence only from a handful of employees from Judge and just one employee of the 39 other vendors. *See supra* at 6-7. Thus, if the Court were to permit notice at all (which it should not), it should be limited to certain individuals who were employed by Judge.[20]

---

[19] As they did by separately litigating against Judge and Citi, does Plaintiffs' counsel plan to bring even more collective action litigation against the 39 other vendors in different lawsuits and courts?

[20] Defendant refers to "certain" Judge employees because any notice should further exclude parties to arbitration agreements. Individuals who signed a new employment contract with Judge after May 2012 agreed to arbitrate their claims. Turano Decl. ¶ 9. To send notice to them would contradict the preemptive force of the Federal Arbitration Act. *See, e.g.*, *Czopek v. TBC Retail Group, Inc.*, No. 14-675, 2015 WL 4716230, at *7 (M.D. Fla. Aug. 7, 2015) (excluding from collective action those covered by an arbitration agreement); *Fischer v. Kmart Corp.*, No. 13-4116, 2014 WL 3817368, at *7 (D.N.J. Aug. 4, 2014) (same); *Morangelli v. Chemed Corp.*, 2010 U.S. Dist. LEXIS 146149, at *8 (E.D.N.Y. June 15, 2010) ("It would be a disservice to judicial efficiency to certify all [employees], when those with arbitration agreements are subject to additional, prolonging motion practice which will likely disqualify them from the class."). And the Court properly could narrow this limited notice further given the December 2013 change to Judge's pay practices (Turano Decl. ¶ 8) such that individuals hired since then directly contradict Plaintiffs' theory of relief.

**E.**     **If Any Notice Is Permitted, It Should Be Fair And Accurate.**

If the Court does permit notice, the parties should devise a joint notice and bring any disputes to the Court.  *See O'Jeda v. Viacom, Inc.*, No. 13-5658, 2014 WL 1344604, at *2 (S.D.N.Y. Apr. 4, 2014) (Furman, J.) (rejecting plaintiff's notice and directing parties to submit revised notice); *Hintergerger v. Catholic Health Sys.*, No. 08-380, 2009 WL 3464134, at *11 (W.D.N.Y. Oct. 21, 2009) (same).  Plaintiffs' notice is improper for many reasons.[21]

**IV.    CONCLUSION**

A common ***billing*** practice for vendors is simply not evidence of a common unlawful ***compensation*** policy for the vendors' employees.  Plaintiffs' own testimony refutes their allegation of a common illegal pay practice, and they have failed to present evidence suggesting any common relevant experience for more than 7,500 putative collective action members.  Citi respectfully requests that the Court deny Plaintiffs' Motion in its entirety.

Dated:  New York, New York
       April 5, 2016                                     Respectfully submitted,
                                     MORGAN, LEWIS & BOCKIUS LLP
                                     s/Michael J. Puma
                                     Michael J. Puma

---

[21] The notice does not contain language on the first page regarding the Court's neutrality and thus creates an initial impression that the litigation is Court-endorsed.  *See Knispel v. Chrysler Grp. LLC*, No. 11-11886, 2012 WL 553722, at *7 (E.D. Mich. Feb. 21, 2012); *Howard v. Securitas Sec. Servs., USA Inc.*, No. 08-2746, 2009 WL 140126, at *10 (N.D. Ill. Jan. 20, 2009).  To ensure contact information is not used for solicitations other than the Court-approved notice, a claims administrator should provide notice rather than Plaintiffs' counsel receiving contact information.  *See Sand v. Greenberg*, No. 08-7840 PAC, 2011 WL 1338196, at *4 (S.D.N.Y. Mar. 22, 2011) (ordering counsel to solicit bids from third-party claims administrators).  The notice fails to advise the recipients that they may be required to travel to New York to be deposed and/or for a trial, and that they may be required to pay statutory costs if they lose.  *See Jancich v. Stonegate Mortg. Corp.*, No. 11-2602, 2012 WL 380287, at *3-4 (D. Kan. Feb. 6, 2012) (requiring language that opt-ins may be required to travel to Kansas for depositions and/or trial).  Plaintiffs propose mail and also intrusive email notice as well as a "reminder," but there should be at most a single notice by U.S. Mail to home addresses because multiple notices suggest judicial endorsement and would pressure individuals to join.  *See Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 358 (E.D.N.Y. 2012) (denying reminder where "[t]he Plaintiffs have not identified any reason why a reminder notice is necessary in this particular case").  If Plaintiffs' counsel are to receive contact information at all, providing phone numbers and e-mail addresses is unwarranted due to privacy concerns and because electronic notice can be altered, forwarded to other people, or otherwise egregiously abused.  *See Hintergerger*, 2009 WL 3464134, at *11 (denying request for telephone numbers and e-mail addresses).

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 5, 2016, I caused to be served via the Court's Electronic Case Filing System a true and correct copy of the foregoing Memorandum of Law in Support of Defendant's Opposition to Plaintiffs' Motion for Conditional Certification along with the supporting Declaration of Michael J. Puma (and Exhibits A-O thereto), Declaration of Donna Gruppuso (and Exhibit A thereto), Declaration of Janice Turano (and Exhibits A-B thereto), Declaration of Nicki McDaniel, Declaration of Nicholas Marra, Declaration of Zaheer Samnani, Declaration of Rajesh Tatooskar, Declaration of Rahul Gadgil, Declaration of Francis Fenelon, and Declaration of Uma Sivasubramani upon the following:

> Adam T. Klein, Esq.
> Molly A. Brooks, Esq.
> Christopher M. McNerney, Esq.
> OUTTEN & GOLDEN LLP
> 3 Park Avenue, 29th Floor
> New York, NY 10016
>
> Ryan F. Stephan, Esq.
> STEPHAN ZOURAS, LLP
> 205 North Michigan Avenue, Suite 2560
> Chicago, IL 60601
>
> David J. Cohen, Esq.
> 414 Hulmeville Avenue
> Penndel, PA 19047
>
> *Attorneys for Plaintiffs*

>> s/ Michael J. Puma
>> Michael J. Puma